UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 22-1791 JGB (SHKx)** | Date | February 9, 2023 |
|---|---|---|---|
| Title | *Miguel Licea v. Caraway Home Inc., et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Defendant's Motion to Dismiss (Dkt. No. 13); (2) VACATING the February 13, 2023 Hearing; and (3) DENYING AS MOOT Plaintiff's Request to Appear via Zoom (Dkt. No. 18) (IN CHAMBERS)

Before the Court is a motion to dismiss filed by Defendant Caraway Home Inc. ("Defendant" or "Caraway"). ("Motion," Dkt. No. 13.) The Court determines the matter is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering all papers filed in support of and in opposition to the Motion, the Court GRANTS the Motion. The February 13, 2023 hearing is VACATED and Plaintiff's request to appear via Zoom at the hearing is DENIED AS MOOT.

## I. BACKGROUND

On October 12, 2022, Plaintiff Miguel Licea ("Plaintiff" or "Mr. Licea") filed a putative class action complaint against Defendant Caraway and Does 1-25. ("Complaint," Dkt. No. 1.) The Complaint asserts subject matter jurisdiction under the Class Action Fairness Act ("CAFA"). (See id.) The Complaint alleges two causes of action: (1) violations of the California Invasion of Privacy Act ("CIPA") pursuant to Cal. Penal Code § 631; and (2) violations of CIPA pursuant to Cal. Penal Code § 632.7. (See id.)

On October 28, 2022, Plaintiff filed a proof of service. (Dkt. No. 10.) On November 8, 2022, Defendant filed a request to extend the time to answer. (Dkt. No. 11.) On November 9, 2022, the Court granted the request. (Dkt. No. 12.)

On December 7, 2022, Defendant filed the Motion. (Motion.) In support of the Motion, Defendant filed a declaration of Andrew D. Bochner. ("Bochner Decl.," Dkt. No. 13-1.) On January 23, 2023, Plaintiff filed an opposition. ("Opposition," Dkt. No. 15.) In support of the Opposition, Plaintiff filed a declaration of Scott Ferrell ("Ferrell Decl.," Dkt. No. 15-1), an exhibit attached to the Ferrell Decl. ("Ex. 1," Dkt. No. 15-2), and a declaration of Miguel Licea ("Licea Decl.," Dkt. No. 15-3). On January 30, 2023, Defendant filed a reply. ("Reply," Dkt. No. 16.)

On February 6, 2023, Plaintiff filed a notice of supplemental authority. (Dkt. No. 17.) The same day, Plaintiff filed a request to appear via Zoom at the hearing on the Motion. (Dkt. No. 18.)

## II. FACTS

Caraway is a company that sells cookware and related kitchen items and appliances. (Motion at 1.)[1] Plaintiff is a resident and citizen of California. (Complaint ¶ 4.) Defendant is a Delaware corporation that owns, operates and controls a website, www.carawayhome.com (the "Website"). (Id. ¶ 5.) Defendant's principal place of business is in New York City, New York. (Motion at 8.)[2] Plaintiff alleges jurisdiction under CAFA because "there are believed to be at least 5,000 class members, each entitled to $5,000 in statutory damages, thus making the amount in controversy at least $25,000,0000 exclusive of interests and costs." (Id. ¶ 1.) "Defendant is subject to personal jurisdiction because it has sufficient minimum contacts with California and it does business with California residents." (Id. ¶ 3.)

Defendant "ignores" CIPA because it "wiretaps the conversations of all website visitors and allows a third party to eavesdrop on the conversations in real time during transmission." (Id. ¶ 9.) Caraway uses a chat feature on its website that automatically records and creates transcripts of conversations with visitors to the Website. (Id. ¶ 11.) It allows a third party to access these communications, purportedly "under the guise of 'data analytics.'" (Id. ¶¶ 11, 13.)

Plaintiff is a "tester" with "dual motivations for initiating a conversation with Defendant." (Id. ¶ 15.) First, he was "genuinely interested" in learning about the (unspecified) "goods and services offered by Defendant." (Id.) Second, as a "tester," he works to ensure that companies abide by privacy laws, and believes he should be "praised rather than vilified" for his efforts. (Id.) Plaintiff brings the action on behalf of a proposed class defined as, "[a]ll persons within California who within the statute of limitations period: (1) communicated with Defendant via the chat feature on Defendant's Website using a cellular telephone, and (2) whose communications were recorded and/or eavesdropped upon without prior consent." (Id. ¶ 21.)

---

[1] This fact is taken from Defendant's Motion because the Complaint does not bother to make a single allegation about the nature of Caraway's business. (See Complaint.)

[2] This fact is taken from Defendant's Motion because the Complaint does not bother to make a single allegation about where Defendant's business is headquartered, a fact easily ascertainable from publicly available sources. (See Complaint.)

Plaintiff "does not know the number of Class Members but believes the number to be in the thousands, if not more." (Id.)

### III. LEGAL STANDARD

**A. Rule 12(b)(1)**

    **1. Jurisdictional Challenges**

"A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." Warren v. Fox Fam. Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). Thus, a jurisdictional challenge can be either facial or factual. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

In a facial attack, the moving party asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). When evaluating a facial attack, the court must accept the factual allegations in the plaintiff's complaint as true. Whisnant v. United States, 400 F.3d 1177, 1179 (9th Cir. 2005).

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone, 373 F.3d at 1039. In resolving a factual challenge, the court "need not presume the truthfulness of the plaintiff's allegations" and "may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment." White, 227 F.3d at 1242. "Where jurisdiction is intertwined with the merits, [the Court] must 'assume the truth of the allegations in the complaint . . . unless controverted by undisputed facts in the record.'" Warren, 328 F.3d at 1139 (quoting Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987)).

    **2. Subject Matter Jurisdiction under CAFA**

Federal courts have limited jurisdiction, "possessing only that power authorized by Constitution and statute." Gunn v. Minton, 568 U.S. 251, 256 (2013). The Court's jurisdiction is either that of federal question or complete diversity of citizenship. See 28 U.S.C. §§ 1331, 1332. "It is to be presumed that a cause lies outside [of a federal court's] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citations omitted). Federal courts must ordinarily address jurisdictional questions before proceeding to the merits of the case. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998); Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577 (1999); Snell v. Cleveland, 316 F.3d 822, 826 (9th Cir. 2002). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 7 Wall. 506, 514 (1868). "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its

own initiative, at any stage in the litigation[.]" Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006). "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Id. (citations and internal quotations omitted); see also Fed. R. Civ. P. 12(h)(3).

"CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs." Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1195 (9th Cir. 2015). Even with the "special liberalization" of jurisdictional requirements under CAFA, "there still must be a requisite amount in controversy that exceeds $5 million." Id. at 1195.

Under certain circumstances, attorney's fees may also be included in the amount in controversy. "[I]f the law entitles the plaintiff to future attorneys' fees if the action succeeds, then there is no question that future attorneys' fees are at stake in the litigation, and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy." Fritsch v. Swift Transp. Co. of Ariz., 899 F.3d 785, 794 (9th Cir. 2018) (internal quotations, brackets, and citation omitted). However, "a court's calculation of future attorneys' fees is limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place." Id. at 796.

**B. Rule 12(b)(2)**

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154-55 (9th Cir. 2006) (citing Fireman's Fund Ins. Co. v. Nat. Bank of Coops., 103 F.3d 888, 893 (9th Cir. 1996)). "Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011) (internal citations omitted). Because California authorizes jurisdiction to the fullest extent permitted by the Constitution, see Cal. Code Civ. P. § 410.10, the only question the Court must ask is whether the exercise of jurisdiction over the defendant would be consistent with constitutional due process. Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003).

The Fourteenth Amendment's Due Process Clause permits courts to exercise personal jurisdiction over any defendant who has sufficient "minimum contacts" with the forum that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The two recognized bases for exercising personal jurisdiction over a non-resident defendant are: (1) "general jurisdiction," which arises where defendant's activities in the forum state are sufficiently "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over him in all matters; and (2) "specific jurisdiction," which arises when a defendant's contacts with the forum give rise to the claim in question. See Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414–16 (1984).

The plaintiff bears the burden of establishing personal jurisdiction. Martinez v. Aero Caribbean, 764 F.3d 1062, 1066 (9th Cir. 2014); Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008) ("In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper"). When the motion is based on written materials, the plaintiff must make a "prima facie showing of jurisdictional facts to withstand the motion to dismiss." Martinez, 764 F.3d at 1066 (quoting Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). To make a "prima facie showing," the plaintiff needs to show facts that, if true, would support jurisdiction over the defendant. Lindora, LLC v. Isagenix Int'l, LLC, 198 F. Supp. 3d 1127, 1135 (S.D. Cal. 2016). To determine if a plaintiff met his burden, "uncontroverted allegations in [the] complaint must be taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.'" Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588-89 (9th Cir. 1996) (quoting WNS, Inc. v. Farrow, 884 F.2d 200, 203 (5th Cir. 1989)).

"[A] finding of general jurisdiction permits a defendant to be hauled into court in the forum state to answer for any of its activities anywhere in the world," Schwarzenegger, 374 F.3d at 801, while specific jurisdiction claims arise "out of defendant's forum related activities." Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316 (9th Cir. 1998). "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." Daimler AG v. Bauman, 571 U.S. 117, 137 (2014) (internal quotations omitted). The Supreme Court has limited general jurisdiction over corporations to only those forums where the corporation has continuous and systemic contacts, such that it is essentially at home. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011).

The Ninth Circuit uses a three-part test to determine if a defendant's contacts with the forum state are sufficient to establish specific jurisdiction. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995). Under that test,

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Boschetto, 539 F.3d at 1015; see also Myers v. Bennet Law Offices, 238 F.3d 1068, 1072 (9th Cir. 2001); Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977).

**C. Rule 12(b)(6)**

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Ileto v. Glock Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994). Courts are not required, however, "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.2d 1049, 1055 (9th Cir. 2008) (internal citation and quotation omitted). Courts also need not accept as true allegations that contradict facts which may be judicially noticed. See Mullis v. U.S. Bankr. Court, 828 F.2d 1385, 1388 (9th Cir. 1987).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

**D. Rule 15**

Federal Rule of Civil Procedure 15 ("Rule 15") provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'" Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not

possibly be cured by allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted).

## IV.  DISCUSSION

Defendant argues that Plaintiff has not established subject matter jurisdiction or personal jurisdiction and fails to state a claim for relief under either cause of action.  (See Motion.)  The Court agrees with Defendant's jurisdictional arguments and does not reach its failure to state a claim argument.

Before turning to the issues of subject matter jurisdiction and personal jurisdiction, the Court acknowledges the central dynamic in this litigation, underscoring all of the deficiencies in the Complaint: Plaintiff, and his counsel, Scott Ferrell, are serial litigants bringing numerous "cookie cutter" lawsuits under CIPA against various businesses that operate websites.[3]  Mr. Ferrell appears to have filed over 60 (and likely more) of these virtually identical lawsuits in the last year, with more seemingly filed every week.  Mr. Ferrell appears to work with multiple "tester" plaintiffs to drum up these lawsuits, though Mr. Licea may be the primary one.  This Court alone has three motions to dismiss set for hearing on February 13, 2023 in cases filed by Mr. Licea and Mr. Ferrell: the instant case; Miguel Licea v. Luxxottica of America Inc, et. al., EDCV 22-1826; and Miguel A. Licea v. Gamestop, Inc. et al., EDCV-22-1562.  These lawsuits bear strong echoes of serial Americans with Disabilities Act (ADA) litigation, in which Mr. Ferrell has also engaged.  Initiating legitimate litigation generally requires a considerable expenditure of time: in order to establish jurisdiction and state a claim for relief, a plaintiff must plead specific facts arising out of a specific encounter with a specific defendant.  As the saying goes, time is also money.  So when the goal is to file as many lawsuits as possible in the least amount of time, it is far easier and cheaper to copy and paste a complaint over and over again, and to write the original template in such a way that hardly anything needs to be swapped out.  Sometimes a plaintiff can get away with this, particularly if a defendant is willing to offer a quick cash settlement.  But other defendants may not roll over so easily, and raise some fundamental questions: why is there not a single specific allegation in this complaint that supports subject matter jurisdiction?  Why is there not a single specific allegation in this complaint that supports personal jurisdiction?  Why is the entire complaint written at such a high level of generality that it could apply word-for-word to the dozens of other businesses this law firm is suing?  And surely, whatever one's views on the propriety of copying and pasting from boilerplate pleadings, there is a point at which all reasonable people should agree the practice has gone too far.  This case reached that point, and then blew past it.  Usually, the serial litigant at least bothers to change the title of the pleading document, or to put the case number on the title page.  But here, the (PDF) file of the Complaint is simply titled "Pleading Template," and Plaintiff's Counsel has not even bothered to write the case number:

---

[3] The Ninth Circuit's unpublished decision in Javier v. Assurance IQ, 2022 WL 1744107 (9th Cir. May 31, 2022) appears to have opened the floodgates for these cases, an unfortunate unintended consequence of a brief, narrow ruling limited to the issue of prior consent.



```
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

MIGUEL LICEA, individually and on          Case No.
behalf of all others similarly situated,

                Plaintiff,
        v.                                  CLASS ACTION COMPLAINT

CARAWAY HOME INC., a Delaware
corporation; and DOES 1 through 25,
inclusive,
                Defendants.
```

For the reasons below, the Court GRANTS the Motion.

### A. Subject Matter Jurisdiction

Defendant argues that the Complaint fails to sufficiently allege that the amount in controversy exceeds $5 million under CAFA. (Motion at 5.) CIPA provides for a private right of action in which a plaintiff can seek $5,000 per violation. Cal. Pen. Code. § 637.2. Therefore, there would need to be at least a thousand class members to meet the $5 million amount in controversy requirement. (Id. at 5.) The entirety of the Complaint's allegations with regard to the number of putative class members, and thus the amount in controversy, is that "Plaintiff does not know the number of Class Members but believes the number to be in the thousands, if not more." (Complaint ¶ 22.) According to Defendant, this vague and conclusory allegation, without a single factual contention in support, is insufficient to plausibly allege the jurisdictional threshold. (Motion at 5.)

Plaintiff all but admits there is no underlying factual basis for his conclusory allegation that he "believes the number to be in the thousands." (Complaint ¶ 22.) His entire argument on the subject is a single sentence: "Given that California is the largest state by population, the proposition that there are 1,000 putative class members in California who used Defendant's chat feature during the class period is plausible." (Opposition at 1.) As the Court has already noted, the Complaint does not allege a single fact about Caraway's business, other than aspects of its alleged "wiretapping" on its website, which are boilerplate allegations that Plaintiff's Counsel asserts against virtually every business he sues under CIPA. What does Caraway do? What does it sell? What kind of "goods and services" that Plaintiff was "genuinely interested in" does it offer? (Complaint ¶ 22.) Is it a big company? Small company? Does it do lots of business in California? A little business? Any business? How much business does it do through its website? For those individuals who use the website, how many of them "use the chat feature . . . using a cellular telephone?" (Id. ¶ 21.) Is it not far more common to buy products from Caraway (and use the cheat feature) using a computer, not a mobile phone? In other words, what about

*Caraway*'s *website specifically* and the *chat feature specifically* that makes it "plausible" that 1,000 or more people are in this putative class? There is no way of knowing from the Complaint.

As at least one federal district court appears to have observed, there is a dearth of authority "evaluating the existence of CAFA jurisdiction in class actions originally filed in federal court," as the "overwhelming majority of decisions concerning CAFA jurisdiction involve cases removed to federal court by defendants." Petkevicius v. NBTY, Inc., 2017 WL 1113295, at *3 (S.D. Cal. Mar. 24, 2017). The Petkevicius court held that a plaintiff who files a case in federal court bears the same burden of establishing CAFA jurisdiction as a removing defendant. Id. at *4. The Court need not follow Petkevicius that far to hold that Plaintiff fails to meet his burden to establish subject matter jurisdiction. "When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith." Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 87 (2014). Background principles of law indicate that "good faith" allegations must be consistent with plausibility pleading standards. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.2d at 1055. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). Put another away, "[t]o render their explanation plausible, plaintiffs must do more than allege facts that are merely consistent with both their explanation and defendants' competing explanation." In re Century Aluminum Co. Sec. Litig., 729 F.3d 1104, 1105 (9th Cir. 2013). "A plaintiff . . . must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction." Carolina Cas. Ins. Co. v. Team Equip., Inc., 741 F.3d 1082, 1088 (9th Cir. 2014) (citation omitted). Applying these principles, it should be obvious that a plaintiff who makes virtually no attempt to adhere to plausibility pleading standards, like Mr. Licea, fails to meet his burden to allege subject matter jurisdiction in good faith:

> [A] threadbare recitation of the amount in controversy element for subject matter jurisdiction under CAFA is insufficient, without more, to establish the Court's subject matter jurisdiction. . . . In other words, simply stating that the amount in controversy exceeds $5,000,000, without any specific factual allegations as to the actual amount sought by the plaintiffs does not constitute a good faith allegation of the amount in controversy any more than an allegation that 'the parties are diverse' would be sufficient to establish the requisite diversity absent specific allegations of the citizenship of the parties. The [complaint] therefore does not contain any good faith factual allegations as to the amount in controversy. Indeed, based on the lack of sufficient plausible factual allegations in the [complaint] as to the amount in controversy, Plaintiff did not meet her burden to establish federal CAFA jurisdiction at the outset. To hold otherwise, would essentially give any class action plaintiff

>      license to file a claim in federal court simply by stating the legal
>      conclusion that CAFA jurisdiction exists.

Petkevicius, 2017 WL 1113295, at *4 (internal citation omitted). Plaintiff has provided no authority in support of his proposition that he can simply assume that, because California has a large population, at least 1,000 Californians must qualify as class members. As Defendant explains, "if the broad, conclusory allegation of 1,000 members was enough, then any proposed class of Californians would *always* meet the amount in controversy requirement." (Reply at 1.) This cannot be true, for even if California has a large population, it does not follow that every business that operates in California has a large number of customers, let alone ones who engage in a specific behavior, such as accessing a chat feature from a mobile phone. None of this is to say that a plaintiff bears a particularly heavy burden to establish an amount in controversy under CAFA, or any aspect of subject matter jurisdiction. But it is a burden nonetheless, and there must be *something*, perhaps even *anything*, of a fact-specific nature to surpass it.

      Plaintiff also argues that he is entitled to include attorney's fees to meet the amount in controversy requirement. (Opposition at 1.) For that proposition, he cites Fritsch, 899 F.3d 785. (Id.) Fritsch is clear that attorney's fees must count toward the amount in controversy requirement only when a plaintiff is *entitled* to prevailing party fees: "[I]f the law entitles the plaintiff to future attorneys' fees if the action succeeds, then there is no question that future attorneys' fees are at stake in the litigation, and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy." 899 F.3d at 794. However, "a court's calculation of future attorneys' fees is limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place." Id. at 796. Fritsch itself considered a statute with a mandatory fee-shifting provision, California Labor Code § 218.5. Id. at 789 n.3. Because CIPA has no attorney's fees provision, let alone a mandatory one, Plaintiff argues that he can recover attorney's fees under California's private attorney general statute, California Code of Civil Procedure § 1021.5. (Opposition at 2.) That statute affords a court the discretion to award a plaintiff attorney's fees as a prevailing party if it finds, among other things, that the action "has resulted in the enforcement of an important right affecting the public interest[.]" See Cal. Civ. Proc. Code § 1021.5. Fritsch's principle does not apply "where there is neither a contractual provision nor a mandatory statutory imperative regarding an award of attorneys' fees." Wood v. Charter Commc'ns LLC, 2020 WL 1330640, at *2 (C.D. Cal. Mar. 21, 2020). As such, attorney's fees do not count toward the amount in controversy requirement in this matter.

      The Court finds that Plaintiff has failed to meet his burden to establish subject matter jurisdiction.

### B. Personal Jurisdiction

      Caraway argues that Plaintiff has not established either general or specific personal jurisdiction over it. (Motion at 6.) The allegations in the Complaint regarding personal jurisdiction are somewhat astonishing, in that there arguably are none. The Complaint simply states, "Defendant is subject to personal jurisdiction because it has sufficient minimum contacts

with California and it does business with California residents." (Complaint ¶ 2.) While most complaints filed in federal court allege more than that, the sheer dearth of jurisdictional allegations need not be fatal if Plaintiff had come forth with additional factual material, such as affidavits, in opposition to the Motion. See Am. Tel & Tel. Co., 94 F.3d at 588-89. But Plaintiff does not do that either. (See Opposition.)

Plaintiff bears the burden of establishing personal jurisdiction. Martinez, 764 F.3d at 1066; Boschetto, 539 F.3d at 1015. When challenged by a defendant, Plaintiff must make a "prima facie showing of jurisdictional facts to withstand [a] motion to dismiss." Martinez, 764 F.3d at 1066 (quoting Schwarzenegger, 374 F.3d at 800). To make a "prima facie showing," the plaintiff needs to show facts that, if true, would support jurisdiction over the defendant. Lindora, 198 F. Supp. 3d at 1135. To determine if a plaintiff met his burden, "uncontroverted allegations in [the] complaint must be taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.'" Am. Tel & Tel. Co., 94 F.3d at 588-89.

Plaintiff implicitly concedes there is no general personal jurisdiction over Caraway (see Opposition), as he must, because Caraway is a Delaware corporation with a principal place of business in New York. (Motion at 8.) As such, it is not "at home" in California. See Daimler, 571 U.S. at 137. The entirety of Plaintiff's briefing on the subject of Defendant's California contacts is a lengthy recitation of case law explaining and applying the Zippo test[4] in the context of other websites. (See Opposition at 4-8.) It is almost certainly copied and pasted from some other brief, for it contains a single sentence involving this case: "Defendant's website at https://www.carawayhome.com ('the Website') is both highly interactive and highly commercial in nature." (Id. at 7.) Plaintiff provides no factual support for that conclusion. Indeed, at no point does Plaintiff bother to explain why any of his cited authorities are relevant to the instant action or how they should apply. Every law student is taught a variation on the "issue, rule, application, conclusion" (IRAC) method for legal analysis. Zippo has over 8,000 citing references in Westlaw. Every federal district court is familiar with the basic legal principles set out in Plaintiff's Opposition, and needs no remedial lecture on the "issue" or "rules." It is the "application" step of the analysis that by far matters the most in any legal brief, and arguably even the only one that matters. When it is cookie cutter pleading that invites a motion to dismiss in the first instance, copying and pasting case law in opposition to that motion will rarely, if ever, carry the day.

Plaintiff argues that the Court should apply a specific iteration of the purposeful availment test for disputes involving websites, the Zippo "sliding scale" approach. (See Opposition at 4.) While that may be wrong for reasons explained below, even if the Court did apply Plaintiff's desired test, it would be of little help to him, because the Complaint is completely devoid of the necessary factual allegations to establish personal jurisdiction under any standard. A cursory review of Plaintiff's cited authorities prove that to be true: they assess the level of interactivity and commercial nature of the exchange of information, the percentage of

---

[4] Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997).

sales a business does in a forum state, the number and nature of goods and services made available to a state's residents, the revenues generated from those sales, the volume of transactions, the transmission of files within the forum state, and so forth. (See Opposition at 5-8.) Neither the Complaint, nor anything else produced by Plaintiff, even attempts to make a showing as to any of these factors. To begin, what *is* Caraway? What does it sell? How many customers does Caraway have in California? Precisely how is its website highly interactive? How does it conduct sales via its website? What percentage of sales does Caraway conduct in California? How many sales has it conducted in California? How much money does it make from California? What transactions occur in California? Does it target Californians with advertising? Plaintiff does not provide the answers to any of this. Even if he did, what would they have to do with this dispute? Why do those contacts relate to, or arise out of, Plaintiff's alleged interaction on the Website? How do Caraway's alleged violations of privacy law affect Californians uniquely? Does anything about its business or website indicate an awareness, or disregard for, California privacy law?

In any event, Plaintiff's invocation of a purposeful availment test is probably incorrect. Perhaps it would be if he had actually bought a product from Defendant, like a pot or pan, and Caraway shipped it to him in California; the parties would thus have entered into a contract for the sale of a good. But this case sounds in tort, not contract, for Plaintiff merely visited Defendant's website, used a smart phone, and "had a conversation with Defendant." (Complaint ¶ 17.) The Ninth Circuit has explained the import of the distinction:

> We have typically treated "purposeful availment" somewhat differently in tort and contract cases. In tort cases, we typically inquire whether a defendant "purposefully direct[s] his activities" at the forum state, applying an "effects" test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum. See Schwarzenegger, 374 F.3d at 803 (citing Calder v. Jones, 465 U.S. 783, 789–90 (1984). By contrast, in contract cases, we typically inquire whether a defendant "purposefully avails itself of the privilege of conducting activities" or "consummate[s][a] transaction" in the forum, focusing on activities such as delivering goods or executing a contract. See Schwarzenegger, 374 F.3d at 802.

Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006). Plaintiff does not cite a single personal jurisdiction case in the CIPA context. (See Opposition.) Defendant cites two, both finding a lack of personal jurisdiction in California. (See Reply at 4-5.) In holding so, Graham v. Noom, Inc., 533 F. Supp. 3d 823, 837 (N.D. Cal. 2021) applies purposeful direction analysis, while the other, Massie v. Gen. Motors Co., 2021 WL

2142728, at *3 (E.D. Cal. May 26, 2021) applies purposeful availment analysis.[5] Massie's thorough reasoning is instructive as to why Plaintiff fails to allege personal jurisdiction even under a sliding scale approach. It reasoned, "[w]ithout facts showing [the defendant] specifically targeted California, the operation of an internationally accessible website is insufficient to serve as a ground for personal jurisdiction." Massie, 2021 WL 2142728, at *4. It observed that the complaint contained "lengthy allegations" involving how the defendant "knew and foresaw that the wiretapping would impact Californians" based on the size of its California customer base, aspects of its privacy policies dedicated to California law, webpages directed specifically towards California, software that collects a user's location (and therefore allowing the defendant to know that an individual is in California), and so forth. Id. at *5. Even so, the Massie court found that the operation of "broadly accessible websites does not constitute the type of minimum contacts with the forum needed for specific personal jurisdiction." Id. at *6. Because Plaintiff's factual showing is far less detailed or persuasive than that which the Massie court found insufficient, it fails even under Plaintiff's desired purposeful availment analysis.

If purposeful direction applies, Plaintiff must show that Defendant allegedly has "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Schwarzenegger, 374 F.3d at 803. Plaintiff's barebones pleading lacks even the most basic showing on these elements. He does not allege if, or how, Caraway aimed any of its business at California. He alleges no connection between Defendant's forum-related contacts and the harm he suffered, which is necessary to show that his claim "arises out of or relates to the defendant's forum-related activities." Schwarzenegger, 374 F.3d at 802. "What is needed—and what is missing here—is a connection between the forum and the specific claims at issue." Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty., 137 S. Ct. 1773, 1781 (2017). The Court need not reach the question of whether the exercise of jurisdiction is reasonable, for Plaintiff fails to meet his burden under the first two parts of the test.

The Court finds that it lacks personal jurisdiction over Defendant. Because Plaintiff fails to establish either subject matter jurisdiction or personal jurisdiction, the Court declines to reach the question of whether he states a claim for relief.[6]

---

[5] This is contrary to Defendant's characterization of Massie in the Reply. (See Reply at 5.)

[6] This is not to say that Plaintiff should amend the Complaint only as to jurisdictional allegations. Defendant argues, "Plaintiff's Complaint is the epitome of what Twombly and Iqbal sought to prevent." (Motion at 15.) That is true as to jurisdictional facts, but it is also true as to the merits of Plaintiff's claims. If Plaintiff chooses to file an amended complaint, he should take the opportunity to plead specific facts as to what Caraway and an (unnamed) third party has done, not just generic allegations copied and pasted from other lawsuits. If Plaintiff chooses not to address these problems and Defendant brings another meritorious motion to dismiss, the Court will take that into consideration when deciding whether dismissal without leave to amend would be appropriate. In all likelihood, this is Plaintiff's final opportunity to file a complaint that can survive a Rule 12 motion.

### C. Jurisdictional Discovery and Leave to Amend

Likely somewhat aware of the glaring deficiencies in his pleading of jurisdictional facts, Plaintiff requests that the Court afford him an opportunity to conduct limited jurisdictional discovery as to both subject matter jurisdiction and personal jurisdiction. (Opposition at 3, 8-9.) The Ninth Circuit has made it clear that a district court's discretion on this question is exceptionally broad: "In granting discovery, the trial court is vested with broad discretion and will not be reversed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant. Discovery may appropriately be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." Data Disc, 557 F.2d at 1285 n.1 (internal citation omitted). District courts routinely deny such requests. See, e.g., Boschetto v. Hansing, 2006 WL 1980383, at *5 (N.D. Cal. July 13, 2006), aff'd, 539 F.3d 1011 (9th Cir. 2008) ("plaintiff merely speculates without any support that discovery might allow him to demonstrate that jurisdiction in California is proper"); W. Air Charter, Inc. v. Sojitz Corp., 2019 WL 4509304, at *10 n.3 (C.D. Cal. May 2, 2019) (Bernal, J.). One district court's reasoning in denying limited jurisdictional discovery is particularly apt here: "Plaintiff's jurisdictional theories . . . rest only on bare allegations . . . These bare assertions are unsupported by evidence and too speculative to support a grant of jurisdictional discovery. Because plaintiff has not demonstrated that resolution of the jurisdictional issue should be delayed and [the defendant] forced to incur discovery costs, his request for discovery is denied." Barantsevich v. VTB Bank, 954 F. Supp. 2d 972, 998 (C.D. Cal. 2013). Jurisdictional discovery is not a substitute for a plaintiff's lawyer doing even the most basic homework about the company he is suing (before suing it), or making even a minimal effort to comply with pleading standards as to jurisdictional facts (or any facts, for that matter). The Court denies the request.

While the Court has considerable doubts as to whether Plaintiff can or will cure the deficiencies cited here, as well as others revealed by Defendant's Motion, the Ninth Circuit requires leave to amend be granted with "extremely liberality." Eminence Capital, 316 F.3d at 1051. At least when plaintiffs have not already been afforded an opportunity to amend the complaint, dismissal without leave to amend is generally only appropriate when the "pleading could not possibly be cured by allegation of other facts." Lopez, 203 F.3d at 1127. These principles apply in the context of a failure to plead jurisdictional allegations. See Carolina Cas. Ins. Co., 741 F.3d at 1086. There is some possibility that Plaintiff may allege sufficient jurisdictional facts.

As such, the Court GRANTS the Motion and DISMISSES Plaintiff's Complaint WITH LEAVE TO AMEND.

//

//

//

## V.   CONCLUSION

For the reasons above, the Court **GRANTS** the Motion and **DISMISSES** the Complaint **WITH LEAVE TO AMEND**.  An amended complaint, if any, shall be filed by February 17, 2023.  The February 13, 2023 hearing is **VACATED**.

**IT IS SO ORDERED.**